[Civ. No. 32668.   Second Dist., Div. Four.   Apr. 14, 1969.]

AL HERD, INC., Plaintiff and Appellant, v. WILLIAM G. ISAAC, Defendant and Respondent.

*Assigned by the Chairman of the Judicial Council.

Boxer & Stoll and Peter R. Stoll for Plaintiff and Appellant.

Tannenbaum & Kaplan and Benjamin L. Kaplan for Defendant and Respondent.

KINGSLEY, J.—In 1965, defendant was the lessee of certain real property in Los Angeles, under a 55-year lease. The lease contained an option to purchase, exercisable at any time during the 5-year period between 1964 and 1969. On August 18, 1965, he entered into an agreement with plaintiff, a duly licensed real estate broker, whereby plaintiff was given the exclusive right for a 60-day period to negotiate for the sale of that property at a price of $250,000. So far as is here pertinent, the agreement provided as follows:

"According to Los Angeles Realty Board commission schedule:

"I hereby agree to pay Broker as commission 5% of the 1st $100,000 and 2½% of the balance of the selling price if said property is sold during the term hereof or any extension thereof by Broker or by me or by another broker or through any other source. If said property is withdrawn from sale, transferred or leased during the term hereof or any extension thereof, I agree to pay Broker said per cent of the above listed price.

"If a sale, *lease* or other transfer of said property is made within three (3) months after this authorization or any extension thereof terminates to parties with whom Broker negotiates during the term hereof or any extension thereof and Broker notifies me in writing of such negotiations, personally or by mail, during the term hereof or any extension thereof, then I agree to pay said commission to Broker." (Italics added.)

Among its other activities under the listing, plaintiff caused a sign to be placed on the property, giving plaintiff's name as

the party to be contacted. As a result of that sign, representatives of a firm called "Richburger, Inc.," contacted plaintiff. One of these representatives, Morrison, spoke to Jerry Wilson and to S. Martin Weiss, both of whom were real estate salesmen employed by plaintiff. On August 17, 1965, Morrison inquired of Wilson if a lease, rather than a sale, could be negotiated for Richburger on the property and Wilson advised Morrison that he (Wilson) would take the matter up with defendant. At this point, Weiss took over the negotiations and, on August 18, 1965, a draft lease was submitted by Richburger to the plaintiff's office.

Weiss' efforts to see defendant about the lease were unsuccessful until September 24, 1965, when Weiss took the offer to defendant. At defendant's request, Weiss hand-carried the draft lease to defendant's then counsel and Weiss testified that he was present in that attorney's office when, on September 24, 1965, the attorney phoned to defendant about the offer.

On November 2, 1965—two weeks after the agreement with plaintiff had expired—defendant executed a lease of the property to Richburger, on terms substantially the same as those contained in the offer procured by plaintiff.

Defendant having refused to pay a commission, plaintiff sued, asking for a commission calculated on the basis of the $250,000 sale price set forth in the listing. Acting under section 631.8 of the Code of Civil Procedure, the trial court granted judgment for defendant at the close of plaintiff's case. Plaintiff has appealed. For the reasons set forth below, we reverse the judgment.

I

The trial court found against plaintiff on the theory that it had not earned a commission since its authority was to secure a sale and not a lease. The case has been argued here on the same theory. The legal issue discussed is interesting, and the California cases thereon are by no means consistent. But we need not decide it here. The listing agreement itself, quoted above, deals directly with the very situation herein involved—namely the case where, after the exclusive period had expired, the owner *leased* to a lessee with whom the broker had negotiated. It is, therefore, quite immaterial whether or not plaintiff could have recovered a commission absent the inclusion of the final paragraph of the agreement, above quoted.

## II

The trial court found (Finding 7) that ". . . plaintiff failed to give notice to defendant of the names of persons with whom plaintiff had negotiated during the term of the exclusive authorization to sell."

It is not clear whether this finding means that plaintiff did not notify defendant of the names of any prospective *buyers* (an admitted fact) or whether it means that plaintiff never advised defendant of the interest of Richburger, Inc. If it means the latter, it is without support in the record. While defendant denied that he read the offer, it is undisputed that it was physically taken to him and that, at his request, it was taken to defendant's attorney who did read it and did discuss its terms with defendant. Since notice to defendant's attorney was notice to defendant, it follows that the notice requirement was met.[1]

Defendant argues that plaintiff had not "negotiated" with Richburger within the meaning of that word as used in the listing agreement. As amplified at oral argument, the contention is that, since plaintiff was retained only to find a buyer, it had no right to "negotiate" for anything other than an outright sale and that a negotiation for a lease was not the "negotiation" contemplated by the paragraph above quoted. We reject that argument, at least as applied to the case at bench. The suggestion of a lease came from Richburger. It was plaintiff's duty to transmit that offer to defendant, as it did here. The term "negotiate" is defined in Webster's Third New International Dictionary as "1: to communicate or confer with another so as to arrive at the settlement of some matter: meet with another so as to arrive through discussion at some kind of agreement or compromise about something: . . ." It is common knowledge that few real estate transactions are consummated on the exact terms of the original offer. The substitution of a lease for a sale, or of a sale for a lease, is not so great a departure as to make a broker a pure volunteer when he transmits such an offer to his principal. To adopt defendant's theory would reduce the paragraph involved to the rare case in which a broker had done nothing except to attempt to make sales and the owner had, thereafter, on his own, entered into lease negotiations. That would reduce the clause to a case in which the broker had actually per-

---

[1]The notification by delivery of a written offer clearly is even better notice to the owner than a mere formal notification saying: "I have been negotiating with X about your property."

formed fewer services for his client than in the case at bench. We cannot accept a construction so unreasonable.

We conclude that plaintiff is entitled to compensation under the language of the listing agreement.

## III

■ The trial court found (Finding No. 6) as follows: "6. The court finds untrue the allegations contained in paragraph 11 of the complaint in that the commission provided for in the contract sued upon pertained solely to the procurement by plaintiff of a buyer for the subject real property; that failing to produce a buyer within the listing period, plaintiff earned no commission and was not damaged in any sum whatsoever as a consequence of the subsequent lease of the said real property by defendant." Unless this is a conclusion of law, which for the reasons we have indicated is incorrect, it also is unsupported by the record. It is undisputed that plaintiff expended both money and time in connection with the Richburger negotiations. Its contract entitled it to compensation. Unless it is compensated, it has been damaged as a matter of law.

## IV

■ However, the *amount* of commission properly payable to plaintiff under the contract[2] is undetermined on the record before us. Except for one casual reference to the matter of amount, the entire argument in the court below was directed to the defense contention that no commission at all was payable. The findings reflect that same concentration. Having determined (wrongly as we have herein decided) that plaintiff could recover nothing, the trial court had no occasion to interpret the language relating to the computation of a commission. These provisions, above quoted are at least ambiguous. We can see at least three possible constructions[3] and the ingenuity of counsel may suggest others. Under some of those constructions, the commission could easily be calculated from the evidence now in the record. Other constructions would have required further evidence which plaintiff did

---

[2]The complaint was drawn in two counts, one for breach of contract, the other in quantum meruit. At the opening of the trial, plaintiff elected to stand on the contract theory.

[3]One construction would impose on defendant, as a sanction against attempts to exclude the broker, a commission calculated on the full listed sale price; another would apply the commission *rates* of the contract to the value of the lease; a third would involve resort to the commission schedule of the Los Angeles Realty Board.

not introduce.[4] In this state of the record, we cannot say that the judgment should be supported on the theory (nowhere expressed below) that plaintiff failed because its proof did not show the *amount* of commission to which it was entitled.

The judgment is reversed.

Jefferson, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied May 1, 1969.

---

[4]The record before us would permit a calculation on either of the first two theories; we cannot discover in the record any evidence of the latter schedule.