THE PEOPLE ex rel. METROPOLITAN CHICAGO NURSING HOME ASSOCIATION et al., Petitioners-Appellees, v. DANIEL WALKER, Governor, et al., Respondents.—(Joel Edelman, Acting Director of the Department of Public Aid, Respondent-Appellant.)

(No. 59337;

First District (3rd Division)—July 3, 1975.

William J. Scott, Attorney General, of Chicago (Herbert L. Caplan, Assistant Attorney General, of counsel), for appellant.

John J. O'Toole, of Chicago, for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County awarding a writ of mandamus to compel the acting director of the Illinois Department of Public Aid to negotiate the rate of reimbursement to be paid to petitioners for services rendered to elderly and infirm recipients of public aid.

Petitioners, the Metropolitan Chicago Nursing Home Association and 45 Chicago-area nursing homes, brought this action for declaratory judgment and a writ of mandamus to compel the Governor of the State of Illinois, Joel Edelman, acting director of the Illinois Department of Public Aid, and other State officials, to do certain acts alleged to be required under the provisions of the Public Aid Code. (Ill. Rev. Stat. 1969, ch. 23, par. 1—1 et seq.) The petition sought a declaration that the present rates of reimbursement for medical services rendered on behalf of public aid recipients were not sufficient to satisfy the requirements of the Public Aid Code and requested the court to set a reasonable and fair reimbursement rate. The petition was filed as a representative action on behalf of petitioners and all others similarly situated.

On August 31, 1972, respondents filed a motion to dismiss, alleging, among other things, that the petition failed to state a cause of action and that the fees paid by the State to various dispensers of medical services were established by arms' length negotiations and not subject to mandamus. The motion further stated that the petition did not present a justiciable question and that petitioners were not proper representatives of the class they purported to represent. Shortly thereafter, petitioners filed a motion for summary judgment and affidavit in support thereof. On January 23, 1973, the trial court granted respondents' motion and entered an order dismissing the petition. Thereafter, on petitioners' motion, the order of dismissal was vacated and petitioners were given leave to file an amended petition.

The amended petition consisted of three counts. In count I, it was set out that petitioners, other than the Association, were long-term health-care facilities operating in compliance with Illinois law and rendering services to elderly and infirm recipients of public aid; that a contract was in full force and effect between petitioner nursing homes and the Department of Public Aid which entitled petitioners to reimbursement for services rendered; and that respondents had failed to administer certain provisions of the Code relating to the reimbursement of long-term health care. Specifically, petitioners charged that respondents had failed to make periodic surveys of cost-of-living factors in relation to needs of recipients of public aid (Ill. Rev. Stat. 1969, ch. 23, par. 12—4.15); that respondents had failed to establish proper standards by which public aid would be determined (Ill. Rev. Stat. 1969, ch. 23, par. 12—4.11); and that respondents had arbitrarily and capriciously fixed the base rate of reimbursement at a rate below that which is required by the Public Aid Code.

Count II stated that in fiscal year 1971-1972 the General Assembly passed an appropriations bill for public aid with a 15 percent increase in funding, and that the Governor unilaterally placed a freeze upon said increase causing petitioners to be damaged on a continuous basis and to be deprived of the proper rate of reimbursement. Petitioners sought a declaration that the 15 percent increase in the base rate of reimbursement be paid forthwith and requested a writ of mandamus directing respondents to approve and pay petitioners the increased rate.

In count III petitioners additionally alleged that the director of the Department had unilaterally refused to negotiate the proper rate of reimbursement with the providers of long-term health care. Such refusal was claimed to be in violation of section 5—7 of the Public Aid Code (Ill. Rev. Stat. 1969, ch. 23, par. 5—7), which provides as follows:

"§ 5—7 Fees and Charges.

The Illinois Department shall negotiate with the various dispensers of medical services the fees or rates which shall govern payment for medical assistance provided under this Article."

Respondents filed a motion to dismiss the amended petition setting forth substantially the same defenses set out in their original motion to dismiss. The trial court denied respondents' motion, and petitioners thereupon renewed their motion for summary judgment. On April 30, 1973, the trial court granted petitioners' motion for summary judgment in part and directed that a pre-emptory writ of mandamus issue commanding Joel Edelman, the acting director of the Illinois Department of Public Aid, to negotiate with petitioners the rate of reimbursement

to be paid for services rendered to elderly and infirm recipients of public aid. This appeal follows.

■■ Mandamus will lie to compel a public official to perform a non-discretionary ministerial duty or to compel an officer to proceed with the exercise of discretion if the petitioner has established a clear legal right to have the duty performed and it appears that the official has arbitrarily and without authority refused to act. (*Ickes v. Board of Supervisors* (1953), 415 Ill. 557, 114 N.E.2d 669.) Where an official duty involves discretion, mandamus may not be used to force a public official to exercise his discretion in a particular way unless an abuse has been shown. (*People ex rel. Hamer v. Board of Education* (1974), 22 Ill.App. 3d 130, 316 N.E.2d 820.) In order to prevail in a mandamus proceeding, the petitioner must allege material facts to show a clear and undoubted right to the relief requested. (*Cooper v. Village of Lincolnshire* (1969), 108 Ill.App.2d 251, 247 N.E.2d 434.) It is likewise essential that the petitioner allege material facts to show a clear duty on the part of respondent to act as requested. *Brown v. City of Joliet* (1969), 108 Ill.App.2d 230, 247 N.E.2d 47.

■■ Mandamus will lie in a proper case to compel performance of a specific act but may not be used to compel a general course of conduct. (*People ex rel. McGrady v. Carmody* (1968), 104 Ill.App.2d 137, 243 N.E.2d 19.) An award of a writ of mandamus is improper where the duties involved are insufficiently specific or where issuance of the writ would require the court to assume supervision over a continuous course of official conduct. *People ex rel. English v. Bowers* (1962), 34 Ill.App.2d 46, 180 N.E.2d 45 (abstract opinion).

Relating the foregoing principles to the present cause, we find that petitioners have not met the requirements of pleading facts to show a clear and undisputed right to the writ of mandamus.

The substantive allegations contained in petitioners' amended petition set forth that respondents "unilaterally refused to negotiate the proper rate of reimbursement" with petitioners and in doing so have violated their duty under section 5—7 of the Public Aid Code. The allegation as to demand was that petitioners had repeatedly sought the relief requested by them from the Governor and Director of Public Aid and it was denied. The petition, however, contained no allegation identifying the specific acts which petitioners claimed to be entitled as a matter of law.

Like many words which describe conduct related to affairs of business, the term "negotiate" may be used in many senses. Courts called upon to construe the term have defined it as "[to] hold intercourse or treat with

a view to coming to terms upon some matter, \* \* \* to conduct communications or conferences \* \* \*" (*Levit v. Bowers* (1954), 2 Ill.App. 2d 343, 347, 119 N.E.2d 536). The term has also been defined "to communicate or confer with another so as to arrive at the settlement of some matter." (*Al Herd, Inc. v. Isaac* (1969), 271 Cal.App.2d 749, 752, 76 Cal. Rptr. 697, 699.) The term "negotiate" within a statute may include an unqualified offer to pay a certain sum (*State Highway Com. v. Assembly of God, Pentecostal* (1962), 230 Ore. 167, 368 P.2d 937), or may involve a duty to observe certain forms and to bargain in good faith (*Chicago, Rock Island & Pacific R.R. Co. v. Switchmens' Union of North America* (W.D. N.Y. 1960), 187 F. Supp. 581). Thus it appears that a duty to negotiate encompasses a wide range of activities that may require an indefinite process of communication and compromise to take place over an unspecified period of time.

As we have noted, in order to be entitled to a writ of mandamus, petitioner must establish a right to performance of a specific act as distinguished from a general course of conduct. In the present case, the petition is fatally defective in that the facts alleged do not set forth a specific act to which petitioners are entitled as a matter of right. At best the allegations contained in the petition establish a right to performance of a general and unspecified course of conduct. The duties to which petitioners claim a clear legal right are so uncertain as to require the court to supervise the Department of Public Aid's entire rate-making process. Under these circumstances the wisdom of the rule establishing that mandamus will not lie to command a course of conduct becomes apparent. The relief sought in the amended petition is so indefinite and uncertain as to be outside the scope of mandamus. The writ, therefore, should not have been issued.

Moreover, the allegations of the amended petition contained no material facts to establish a clear breach of duty on the part of the Director of the Department. The allegation that respondents have "refused to negotiate" is merely a conclusion of law, an unsupported opinion of petitioners that cannot justify the issuance of a writ of mandamus. Nowhere in the petition have petitioners alleged facts to show that the Director, by offering medical providers a base reimbursement rate and thereby obtaining necessary health services, has failed to do all that is required under section 5—7.

■■ The record before us indicates that respondents, in establishing rates to govern payment for medical assistance, made an unqualified offer to pay a certain amount for services provided to public aid recipients. It is not unreasonable to assume that the legislature, in requiring the Department to negotiate reimbursement rates with medical

providers, intended the Department to have the power to reach agreement through this simple process of offer and acceptance. If petitioners' interpretation of section 5—7 were accepted, the Department would be without authority to obtain adequate medical services at the lowest possible price. The Department could be forced to adjust rates upward even though the number of willing providers at the current rate exceed the need for services. Since the amended petition contains no factual averments to the contrary, we find that the term "negotiate" as used in section 5—7 does not preclude the Director from offering to pay medical providers at rates which he deems just. The petition does not meet the requirement of pleading material facts to show a clear breach of duty by respondents. Petitioners, for that reason also, were not entitled to a writ of mandamus.

For the reasons stated above, the order of the circuit court awarding a writ of mandamus is reversed.

Order reversed.

McGLOON, P. J., and DEMPSEY, J., concur.