FLOWER CAB COMPANY and Checker Taxi Company, Inc., Plaintiffs-Appellees,

v.

Karen PETITTE, individually and as Commissioner, Department of Consumer Services of the City of Chicago, and the City of Chicago, Defendants-Appellants.

No. 82–2208.

United States Court of Appeals, Seventh Circuit.

Submitted July 30, 1982.

Decided Aug. 4, 1982.

Stanley Garber, Corp. Counsel, City of Chicago, Chicago, Ill., for defendants-appellants.

Bernard J. Nussbaum, Sonnenschein, Carlin, Nash & Rosenthal, Chicago, Ill., for plaintiffs-appellees.

Before CUMMINGS, Chief Judge, and PELL and POSNER, Circuit Judges.

POSNER, Circuit Judge.

Chapter 28, section 28–9.1, of the Municipal Code of the City of Chicago provides that taxicab licenses "shall be assignable," with certain qualifications not pertinent to this case. On July 16, 1982, the Commissioner of Consumer Services, who is responsible for administering Chapter 28 (see Munic.Code, ch. 16, § 16–4(2)), announced that she would not act on any pending applications to assign taxicab licenses because a proposed ordinance prohibiting such assignment had been introduced in the City Council the day before. A few days earlier Checker Taxi Company had agreed to sell Flower Cab Company 13 taxicab licenses, and on the day before the announcement Flower had filed its application for approval of the assignments under section 28–9.1. The Commissioner refused to act on it and Checker and Flower thereupon brought suit under 42 U.S.C. § 1983 against her and the

city, seeking an injunction to compel her to act. The district court granted a preliminary injunction and the defendants, having failed to obtain from the district judge a stay pending appeal, have asked us for a stay.

The district court concluded that the plaintiffs would be able to prove at the trial of this case that the Commissioner's refusal to consider Flower's application violated the Fourteenth Amendment by depriving the plaintiffs of a property right without due process of law, because she acted arbitrarily, without justification, in violation of the ordinance, and without giving the plaintiffs notice or an opportunity for a hearing. The plaintiffs do not, as we understand it, complain that the city has taken their property without just compensation; they argue that the city violated their constitutional rights by taking it at all, in violation of the ordinance and without according them any procedural safeguards.

■ For purposes of acting on the defendants' motion for a stay pending appeal we shall assume without deciding both that a taxicab license in Chicago is "property" within the meaning of the due process clause of the Fourteenth Amendment and that a refusal to allow the assignment of a property right made assignable by state or municipal law is a sufficient deprivation of property to activate the clause, even though the refusal was temporary (i.e., until the City Council acted on the proposed ordinance). It remains to consider whether there was a denial of due process of law. We think there probably was not. Although cast in familiar terms of denial of procedural rights, the complaint in this case does not seek notice or a hearing; it seeks compliance with an ordinance that imposes a duty on the Commissioner of Consumer Services to approve the assignment of taxicab licenses upon conditions that the plaintiffs claim (without contradiction) to satisfy. We think it a doubtful proposition that every failure—even every deliberate refusal—of state or city officials to comply with ministerial duties in transferring property gives rise to a claim under the Constitution: that if a clerk refuses to record a deed, the property owner is entitled to a mandatory injunction against him from a federal court. This is not to suggest that a federal court cannot issue a mandatory injunction in an appropriate case brought under section 1983; of course it can. *Carter v. Hardy*, 526 F.2d 314 (5th Cir. 1976). But this does not strike us as an appropriate case.

The federal courts are an odd place to litigate compliance with municipal law, and section 1983 an inapt vehicle for bringing mandamus actions against municipal officials. Of course this suit could not have been brought under the federal mandamus statute, 28 U.S.C. § 1361, which authorizes actions only against federal officers. If a state refused to provide its own, reasonable remedies in the nature of mandamus to control its officers whose duties are to protect property rights, then a serious constitutional issue would arise; but there is no suggestion of that here, and in fact mandamus is available under Illinois law to compel local officers to perform their ministerial duties. See Ill.Rev.Stat.1981, ch. 110, art. XIV; *Saline Branch Drainage Dist. v. Urbana-Champaign Sanitary Dist.*, 395 Ill. 26, 69 N.E.2d 251 (1946); *People ex rel. Metropolitan Nursing Home Ass'n v. Walker*, 31 Ill.App.3d 38, 332 N.E.2d 750 (1975).

■ We think in short that this case probably comes within the principle of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), that not every act of a state officer that deprives a person of his property rights violates the due process clause, at least where there are adequate postdeprivation remedies under state law, such as mandamus, as there appear to be here. As in *Parratt*, "the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur." *Id.* at 541, 101 S.Ct. at 1915. Cf. *Ellis v. Hamilton*, 669 F.2d 510, 515 (7th Cir. 1982); *Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345, 1352 (9th Cir. 1981); *Sheppard v. Moore*, 514 F.Supp. 1372, 1376 (M.D.N.C.1981). If this complaint is found to state a claim under the due process clause, the scope of section 1983 will be dramatically broadened to embrace every deliberate failure by a state or local officer

to perform a ministerial duty necessary to the full enjoyment of a property right.

It is significant that the plaintiffs' counsel has cited no precedent for this expansion in the reach of the Fourteenth Amendment. Nor have we discovered any. *Flood v. Margis*, 461 F.2d 253 (7th Cir. 1972), holds only (so far as is relevant to this case) that the federal courts have jurisdiction to consider a claim of denial of due process based on an arbitrary refusal to renew a license—a proposition not at issue in this case. *Sternaman v. County of McHenry*, 454 F.Supp. 240 (N.D.Ill.1978), involved the arbitrary denial of a building permit by a county zoning board; and although the court found a denial of due process, the emphasis in the opinion is on unequal treatment constituting a denial of equal protection. See *id.* at 245, 250. In the present case there is no suggestion of unequal treatment: so far as appears, all applications for assignment of taxicab licenses have been frozen. A single sentence in *Madyun v. Thompson*, 657 F.2d 868, 873 (7th Cir. 1981), relying on a pre-*Parratt* decision, *Kimbrough v. O'Neil*, 545 F.2d 1059 (7th Cir. 1976) (*en banc*), suggests that an intentional taking of a state prisoner's property by an employee of the prison is actionable under section 1983; but the discussion is much too brief to be taken as announcing a principle of general application beyond the prisoners'-rights context in which the case arose; nor was it a case where the plaintiff was seeking relief in the nature of mandamus.

■ Contrary to the district court, therefore, we doubt that the plaintiffs will succeed at trial in establishing a claim under section 1983; and since a probably baseless federal injunction interfering with the operation of municipal government is a serious affront to the theory and practice of federalism, we conclude that the preliminary injunction granted by the district court pending appeal should be stayed without requiring the city to demonstrate irreparable injury beyond what is inherent in an injunction that prevents its officials from carrying out what they conceive to be their duties. In addition, the plaintiffs have failed to show irreparable harm to them that might—if we thought their prospects of prevailing at trial brighter than they seem to be on the documents before us— justify withholding the stay and allowing the preliminary injunction to continue in effect. A mere delay in the assignment of some taxicab licenses pending action by the City Council on a proposal to make such licenses nonassignable should be compensable by money damages, at least in the absence of some indication that it may take the City Council months or years to act. In fact it is not the delay that appears to concern the plaintiffs, but the possibility that the Council will pass the proposed ordinance promptly—before the assignment of the licenses is approved. The plaintiffs want to "get in under the wire." This is not an interest entitled to the protection of the courts. Even if the proposed ordinance, if enacted, would result in an unconstitutional deprivation of the plaintiffs' property rights, it would obviously be premature to enjoin the enforcement of an ordinance that has not yet been enacted, and for all we know may never be; indeed, there is no actual controversy so far as the proposed ordinance is concerned.

It should go without saying that all of our legal and evidentiary observations are tentative, based as they are on the very incomplete record before us on this motion for a stay and the short time that we have had to act on the motion. We freely acknowledge that this is an uncertain area of law. See *McCowen v. City of Evanston*, 534 F.Supp. 243, 248–49 (N.D.Ill.1982). But on the basis of what is before us we conclude that a stay should be granted. See 11 Wright & Miller, Federal Practice and Procedure §§ 2904, 2908, at pp. 316, 332 (1973).

MOTION FOR STAY GRANTED.

ON MOTION TO VACATE STAY AND ON PETITION FOR REHEARING WITH SUGGESTION OF REHEARING EN BANC

■ The plaintiffs-appellees have asked this panel to vacate its stay of the preliminary injunction, or, alternatively, for the

court *en banc* to vacate the stay. Neither the Federal Rules of Appellate Procedure nor the rules of this circuit provide explicitly for rehearings or rehearings *en banc* of stays granted by a panel of the court. But a panel that grants a stay can also vacate it; and Rule 35(a) of the Federal Rules of Appellate Procedure provides for rehearing *en banc* of "an appeal or other proceeding." We believe therefore that the relief asked for by the appellees is within the power of this court to grant; but we decline to vacate our stay, and no member of the court in regular active service has voted to hear the matter *en banc*.

When the motion to stay the preliminary injunction was filed with this court, the appellees, in opposing the motion, did not cite a single case in support of their position. In their motion to vacate they have overcorrected this omission by citing a large number of cases. One, *Mother Goose Nursery Schools v. Sendak*, 502 F.Supp. 1319 (N.D.Ind.1980), though distinguishable on its facts, supports their petition. But since it is a district court decision, rendered before *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (the principal basis of our opinion in this case), it is not substantial authority in their favor.

The other cases they cite are inapposite. *Logan v. Zimmerman Brush Co.*, —— U.S. ——, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), reinforces the basic point made in *Parratt* (and followed in our opinion)—the distinction between noncompliance by a state officer with ministerial duties that include the protection of property rights, on the one hand, and an established state procedure that deprives a person of his property rights without due process of law, on the other—by emphasizing that "it is the state system itself that destroys a complainant's property interest, by operation of law.... Unlike the complainant in *Parratt*, Logan is challenging not the Commission's error, but the 'established state procedure' that destroys his entitlement without according him proper procedural safeguards." 102 S.Ct. at 1158. That procedure included action by the state's highest court. In the present case there was no "established state procedure" of refusing to assign taxicab licenses, but simply a refusal by an individual city officer against which the plaintiffs could have sought relief under state law. Logan had no state remedies other than a tort suit described by the Supreme Court as "a lengthy and speculative process which ... will never make the complainant whole." 102 S.Ct. at 1158. The plaintiffs in this case could have sought mandamus.

*Lugar v. Edmondson Oil Co.*, —— U.S. ——, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), also cited in the motion to vacate the stay, involved a statutory garnishment procedure—an established state procedure. *Patsy v. Board of Regents of Florida*, —— U.S. ——, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), held that section 1983 does not require exhaustion of state administrative remedies; exhaustion is not the theory of our decision. *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), held that cities can be liable under section 1983—a proposition not in question in this case. *United States ex rel. Hoover v. Franzen*, 669 F.2d 433, 445 n. 28 (7th Cir. 1982), dealt with "substantive due process," a concept distinct from any involved in the present case; and we said there that the "alleged violation of state law does not per se result in a violation of the federal Constitution," *id.*, which is what we also said in our opinion in this case.

The appellees cite two cases for the proposition that the existence of a constitutional violation establishes irreparable injury per se, but one involves the First Amendment and the other involves prison conditions. See *Burns v. Elrod*, 509 F.2d 1133 (7th Cir. 1975), aff'd, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Preston v. Thompson*, 589 F.2d 300 (7th Cir. 1978). In such cases the quantification of injury is difficult and damages are therefore not an adequate remedy. The present case involves property rights, specifically taxicab licenses that, being bought and sold continually, have a readily ascertainable market price.