PARK SUPERINTENDENTS' PROFESSIONAL ASSOCIATION *et al.*, Plaintiffs-Appellants, v. GEORGE RYAN, Governor, *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 1—00—2103

Opinion filed February 21, 2001.—Rehearing denied March 27, 2001.

Gilbert A. Cornfield and Peter C. Swanson, both of Cornfield & Feldman, of Chicago, for appellants.

Jeffrey D. Colman, Mark D. Pollack, and Deborah R. Alexander, Special Assistant Attorneys General, of Jenner & Block, of Chicago, for appellees.

JUSTICE WOLFSON delivered the opinion of the court:

For several years, the Park Superintendents' Professional Association and some of its members have been trying to get the State of Illinois to negotiate employment terms and to follow certain provisions of the Illinois Personnel Code (20 ILCS 415/1 *et seq.* (West 1998)). Reviewing court decisions until now have rejected every theory raised by the plaintiffs except one: whether *mandamus* would be proper to remedy any of the defendants' alleged acts or omissions. Now, we close that door.

Plaintiffs, the Park Superintendents' Professional Association (Association), its president, Jon Blume, and members of the Association Dennis Doyle and Robert Grosso, appeal from the dismissal with prejudice of three counts in their fourth amended complaint seeking a writ of *mandamus* to compel defendants to comply with sections of the Illinois Personnel Code (Personnel Code) (20 ILCS 415/1 *et seq.* (West 1998)) and Personnel Rules (Rules) (see 80 Ill. Adm. Code § 302.10 *et seq.* (2000)) in matters of hiring, negotiating, and processing grievances.

This court previously affirmed with prejudice the dismissal of portions of plaintiffs' second amended complaint raising equal protection and due process claims based on defendants' failure to negotiate with the Association, affirmed without prejudice the dismissal of the remaining three counts alleging defendants' violations of the Person-

nel Code, and remanded to give plaintiffs an opportunity to plead an action for *mandamus*. *Park Superintendents' Professional Ass'n v. Ryan*, No. 1—99—1288 (1999) (unpublished order under Supreme Court Rule 23).

On defendants' motion to dismiss, the trial court dismissed "all claims and causes" in the fourth amended complaint with prejudice. Plaintiffs contend the trial court erred in finding: (1) the relief they requested was not available in *mandamus*; (2) *laches* barred their claims; and (3) they lacked standing. Plaintiffs do not dispute the trial court's dismissal with prejudice of the remaining counts. We affirm the trial court.

### HISTORY

The Association is a voluntary, nonprofit corporation comprised of site supervisors and site managers, also referred to as public service administrators (PSAs), who supervise Illinois' state parks and historical sites. All Association members are state employees, employed by the State of Illinois Department of Natural Resources or the Historic Preservation Agency. They are covered by provisions of the Personnel Code, which is implemented by the Department of Central Management Services (CMS).

Beginning in May 1993, the Association unsuccessfully petitioned the Illinois State Labor Relations Board (ISLRB), seeking designation as the exclusive bargaining agent for all PSAs. The ISLRB dismissed the petition in April 1994, finding that PSAs are managerial employees within the meaning of section 3(j) of the Illinois Public Labor Relations Act (5 ILCS 315/3(j) (West 1996)) and, therefore, not eligible for inclusion in a collective bargaining unit. 5 ILCS 315/3(n), 6(a) (West 1996). That decision was affirmed on appeal (*Illinois Federation of Public Employees, Local 4408 v. Illinois State Labor Relations Board*, No. 1—94—1640 (1995) (unpublished order under Supreme Court Rule 23)) and the supreme court denied leave to appeal (165 Ill. 2d 551 (1996)).

CMS denied the Association's subsequent attempts to pursue labor negotiations, citing the managerial status of PSAs which excludes them from collective bargaining. The Director of CMS dismissed Blume's subsequent grievance at the fourth level as not grievable under the CMS Rules.

The Association and Blume filed suit in state and federal court, seeking review of CMS's refusal to negotiate with the Association. The federal claims were eventually dismissed.

The Association and Blume initially filed suit in Cook County circuit court on February 13, 1998. The first amended and second

amended complaints were dismissed pursuant to defendants' section 2—615 motion (735 ILCS 5/2—615 (West 1998)).

On appeal from the dismissal of their second amended complaint, plaintiffs asked this court to construe their claims under the Personnel Code as actions for *mandamus*. Because plaintiffs had not pled *mandamus* and the allegations of the complaint did not provide sufficient information on which to determine whether a *mandamus* action could be maintained, this court affirmed the dismissal but remanded to allow plaintiffs to plead *mandamus* claims.

Plaintiffs filed a third amended complaint on March 17, 2000, adding three *mandamus* claims and adding Doyle and Grosso as additional plaintiffs. The court granted defendants' motion to dismiss and granted plaintiffs leave to file a fourth amended complaint.

On April 13, 2000, plaintiffs filed their fourth amended complaint. The specific allegations in each count seeking *mandamus* are set out below.

Count I

In count I, plaintiffs sought a writ of *mandamus* to compel defendants to comply with the examination and hiring requirements of the Personnel Code. Specifically, they sought to compel defendants to promulgate rules for posting and announcing vacant civil service positions prior to any appointment; to post and announce open competitive and promotional examinations for vacant positions prior to appointment; and to fill all vacant positions from eligible lists prepared in accordance with the Personnel Code.

Plaintiffs alleged the following appointments were not made from among the three highest ranking candidates on an eligibility list or by approval of the Director from a lower ranking group in compliance with sections 8b.3 and 8b.5 of the Personnel Code. 20 ILCS 415/8b.3, 8b.5 (West 1998).

Plaintiffs challenged four appointments:

"A. In and around December 1999, James Gillespie was appointed to a Site Superintendent position at Sam Parr State Park.

B. In and around July 1999, Kathy Clark was appointed to a Site Superintendent position at Kankakee River State Park.

C. In and around 1997[,] Jerry Shaefer was appointed to a Site Superintendent position at Morrison Rockwood State Park.

D. In and around 1997, Canny Challans was appointed to a Site Superintendent position at Beaver Dam State Park."

Plaintiffs asserted the positions could not have been filled in other permitted ways such as promotion, demotion, or transfer because the appointees did not previously hold civil service positions. And if the

positions were filled initially by emergency appointment, temporary appointment, or provisional appointment, the permissible time limits for those appointments would have expired and the positions would be subject to the requirements of the Personnel Code and the Rules for appointment from eligible lists (20 ILCS 415/8b.8, 8b.9, 8b.10 (West 1998)).

Plaintiffs alleged because defendants did not post or announce any type of examination, Blume, Doyle, and Grosso were denied the opportunity to apply for appointment to the vacant positions. Blume filed a grievance in April 1997 regarding the examination and hiring procedures, which the Director of CMS dismissed as not grievable.

### Count II

In count II, plaintiffs sought a writ of *mandamus* to compel defendants to negotiate with "Plaintiff Association" pursuant to section 9(7) of the Personnel Code, which provides the Director of CMS has a "duty" to conduct negotiations affecting pay, hours of work, or other working conditions. 20 ILCS 415/9(7) (West 1998).

Plaintiffs alleged on February 24, 1997, the Association sent a letter to the Director of CMS to request labor negotiations regarding pay, hours of work, and working conditions and offering to prove the Association's members authorized the Association to be their exclusive bargaining representative.

On March 21, 1997, Blume filed a grievance on behalf of himself and the Association, grieving the refusal of the Director of CMS to negotiate as required by section 9(7) of the Personnel Code. The grievance referenced the Association's letter of February 24, 1997, as further explanation of the grievance.

Plaintiffs alleged defendants purposefully failed and refused to conduct negotiations with the Association over matters affecting pay, hours of work, or other conditions of employment.

### Count III

In count III, plaintiffs sought a writ of *mandamus* to compel defendants to comply with the grievance procedure of the Personnel Code and the Rules, which provide for a four-step grievance process and the appointment of a grievance committee to make disposition recommendations to the Director of CMS, who shall make the final determination (20 ILCS 415/8c (West 1998); 80 Ill. Adm. Code §§ 303.20(f), 303.30 (2000)).

Plaintiffs alleged Blume filed two grievances—on March 21, 1997, and April 16, 1997—grieving his inability to apply for a vacant position and grieving defendants' refusal to negotiate pay, hours of work,

and working conditions. The Director of CMS dismissed both grievances at step 4 of the grievance procedure. Plaintiffs attached the grievances and dismissal letters as exhibits.

Plaintiffs alleged further the Director had refused to process a grievance filed by Grosso on October 27, 1997, grieving the filling of a vacant PSA position without prior posting or competitive examination. The grievance, attached as an exhibit, establishes review at steps 2 and 3 resulted in findings of "no violation of the Personnel Rules." Grosso submitted the grievance to the Director for review and final determination on December 17, 1997.

Plaintiffs sought a writ of *mandamus* to compel defendants to process outstanding and future grievances through step 4 of the grievance procedure by appointing a grievance committee as required by the Rules.

Defendants filed a combined motion to dismiss (735 ILCS 5/2—615, 2—619.1 (West 1998)). They alleged in counts I through III plaintiffs failed to state a claim for *mandamus* on which relief could be granted (735 ILCS 5/2—615 (West 1998)); plaintiffs failed to exhaust their administrative remedies (735 ILCS 5/2—619(a)(1), (a)(9) (West 1998)); and counts IV through X were barred due to the law of the case because the dismissal with prejudice of those restated claims was previously affirmed by this court.

On May 5, 2000, after defendants filed their motion to dismiss, Blume, as a civil service employee and president of the Association, wrote a letter of complaint to the Civil Service Commission to request review of CMS' employment practices. The letter referenced defendants' motion to dismiss this lawsuit based in part on plaintiffs' failure to exhaust their administrative remedies.

The letter of complaint raised the same issues included in the *mandamus* claims on appeal before us: failure to follow hiring and promotion procedures mandated by the Rules, failure to negotiate as required by the Personnel Code, and failure to properly process grievances through step 4 as provided by the Rules. (Defendants have appended to their brief on appeal the subsequent final order of the Civil Service Commission. The Commission found no violations of the Personnel Code or Rules.)

The plaintiffs' failure to exhaust their administrative remedies was the subject of defendants' section 2—619 motion to dismiss, but the trial court never reached it. Neither do we.

On May 23, 2000, the trial court granted defendants' motion to dismiss plaintiffs' fourth amended complaint with prejudice. The trial court found plaintiffs guilty of *laches* in bringing the *mandamus* claims. The court also found all the actions plaintiffs sought to compel

were discretionary and, therefore, not subject to the remedy of *mandamus*. The court further found the plaintiffs lacked standing, absent injury, to assert the claims.

Plaintiffs contend on appeal the trial court erred because their factual allegations sufficiently stated a claim for *mandamus* to survive a motion to dismiss. They argue (1) *mandamus* was an appropriate remedy to compel defendants to exercise the discretion vested in them; (2) *laches* did not bar their claims and was implicitly rejected by this court when it remanded to allow a repleading of *mandamus*; and (3) both the Association and the individual plaintiffs had standing to maintain the cause of action.

## DECISION

■ We review *de novo* the dismissal of a complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/3—615 (West 1998)). *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 491, 713 N.E.2d 543 (1999).

■ When reviewing the dismissal of a complaint, we construe the allegations in the light most favorable to the plaintiffs and determine whether plaintiffs have alleged sufficient facts to establish a cause of action on which relief may be granted. *Weatherman*, 186 Ill. 2d at 491; *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 407, 667 N.E.2d 1296 (1996). Exhibits attached to the complaint may be considered. *Weatherman*, 186 Ill. 2d at 491-92 (exhibits, matters of judicial notice, and judicial admissions in the record may be considered). We may affirm the trial court on any basis in the record. *McGuire v. Ameritech Cellular Corp.*, 314 Ill. App. 3d 83, 85, 731 N.E.2d 343 (2000).

## Mandamus

■ "*Mandamus* is an extraordinary remedy to enforce, as a matter of right, 'the performance of official duties by a public officer where no exercise of discretion on his part is involved.' " *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 229, 710 N.E.2d 798 (1999), quoting *Madden v. Cronson*, 114 Ill. 2d 504, 514, 501 N.E.2d 1267 (1986). Rules for pleading *mandamus* are the same as those applicable to actions at law. *Noyola v. Board of Education*, 179 Ill. 2d 121, 133, 688 N.E.2d 81 (1997). To survive a motion to dismiss for legal insufficiency, a complaint seeking *mandamus* "must allege facts which establish a clear right to the relief requested, a clear duty of the respondent to act, and clear authority in the respondent to comply with the writ." *Noyola*, 179 Ill. 2d at 133; *Baldacchino v. Thompson*, 289 Ill. App. 3d 104, 109, 682 N.E.2d 182 (1997).

If public officials have failed to comply with requirements imposed

on them by statute, a court may compel them to do so by a writ of *mandamus*, provided the requirements for *mandamus* have been satisfied. *Noyola*, 179 Ill. 2d at 132. If a public official fails to exercise the discretion vested in him, *mandamus* is an appropriate remedy to compel him to do so. *People ex rel. Tucker v. Kotsos*, 68 Ill. 2d 88, 99-100, 368 N.E.2d 903 (1977) (proper to compel parole board to hold reasonably prompt revocation hearing when it refused to act). But *mandamus* is not appropriate to regulate a course of official conduct or enforce the performance of official duties generally. *In re F.B.*, 206 Ill. App. 3d 140, 156, 564 N.E.2d 173 (1990).

■ In count I, plaintiffs sought to compel defendants to promulgate rules for the posting and announcement of vacant civil service positions, to post and announce open competitive and promotional examinations for vacant civil service positions, and to fill all vacant civil service positions from an eligible list.

Plaintiffs have not cited any section of the Personnel Code or Rules, and we find none, which would require defendants to announce vacant positions. Without a duty to announce vacant positions, it follows defendants have no duty to promulgate rules for posting or announcing vacant positions. Therefore, plaintiffs cannot show they have a clear, legal right pursuant to the Personnel Code to compel defendants to act. See *Baldacchino*, 289 Ill. App. 3d at 114; *People ex rel. Mathes v. Foster*, 67 Ill. 2d 496, 505, 367 N.E.2d 1320 (1977) ("*Mandamus* will lie only to require respondents to promulgate rules which are contemplated by the statute and which, assertedly, do not exist"). In this case, plaintiffs did not show the rules they sought to compel defendants to promulgate were required by the Personnel Code.

In addition, although the Personnel Code and the Rules provide for examinations to be announced and held (20 ILCS 415/8b.1 (West 1998); 80 Ill. Adm. Code § 302.40 (2000)) and eligible lists to be maintained (20 ILCS 415/8b.3 (West 1998); 80 Ill. Adm. Code § 302.80 (2000)), there is no specific requirement for examinations to be held each time a civil service position becomes vacant. Rather, the Director may discontinue offering any examination when the eligible list contains a sufficient number to meet the needs of the state service. 80 Ill. Adm. Code § 302.20 (2000).

The Director also may add to the eligible lists the names of successful candidates established by the results of competitive examinations conducted by any merit system established by federal law or another state. 20 ILCS 415/8b.1 (West 1998); 80 Ill. Adm. Code § 302.10 (2000). Appointments are contemplated to be made from an existing eligible list created by previous examinations. See 20 ILCS 415/8b.5

(West 1998). We find no requirement in the Personnel Code or Rules that an examination be conducted each time a position becomes vacant. Such a requirement would be an undue and costly burden for the State.

Furthermore, not every vacancy is required to be filled from an eligible list. The Rules provide: "When" an appointment is made from an eligible list resulting from an open competitive or promotional examination, the appointment shall be made of the person within the three highest grades or from the highest ranking group. 80 Ill. Adm. Code § 302.110 (2000).

The Personnel Code does not specifically require appointment from an eligible list when a vacancy is filled through a transfer or reinstatement. See 20 ILCS 415/8b.11, 8b.12 (West 1998). In addition, the Director may approve the voluntary request of a certified or probationary employee to accept assignment to a vacant position in a class having a lower maximum salary. 80 Ill. Adm. Code § 302.500 (2000). Merit system transfers of employees in a system other than the Personnel Code are also allowed. 80 Ill. Adm. Code § 302.425 (2000). Furthermore, when filling a position through a promotion, consideration of an eligible list is not the sole determinative factor. 20 ILCS 415/8b.2 (West 1998); *Foster*, 67 Ill. 2d at 502.

The trial court properly dismissed count I because plaintiffs failed to meet their burden to show they had a clear, legal right to the relief requested. See *Machinis v. Board of Election Commissioners*, 164 Ill. App. 3d 763, 767, 518 N.E.2d 270 (1987).

■ In count II, plaintiffs sought to compel defendants to negotiate with the Association. Plaintiffs alleged defendants' failure to comply with the negotiation requirement set out in section 9(7) of the Personnel Code.

Plaintiffs did not establish a clear right to compel defendants to negotiate with the Association.

The ISLRB determined plaintiffs are managerial employees who are not entitled to engage in collective bargaining. 5 ILCS 315/3(j), (n), 6(a) (West 1996); see also *Chief Judge of the Sixteenth Judicial Circuit v. Illinois State Labor Relations Board*, 178 Ill. 2d 333, 338-39, 687 N.E.2d 795 (1997). In case of any conflict between the provisions of the Illinois Public Labor Relations Act and any other law relating to employment relations, the provisions of the Illinois Public Labor Relations Act shall control. 5 ILCS 315/15(a) (West 1998). A finding that the Association is entitled to collective bargaining under section 9(7) of the Personnel Code would directly conflict with its preclusion from collective bargaining under the Illinois Public Labor Relations Act and would render the preclusion meaningless. We reject so destructive a

statutory interpretation. See *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 394, 712 N.E.2d 298 (1998).

Although plaintiffs did not seek to compel defendants to negotiate with individual plaintiffs, we note the Director does have a statutory "duty" to conduct negotiations with employees over matters of employment. 20 ILCS 415/9(7) (West 1998). If the legislature's choice of the word "duty" is to mean something, the Association's exclusion from collective bargaining would not foreclose an individual plaintiff's right to negotiate with his employer under the Personnel Code. See *Roark v. Macoupin Creek Drainage District*, 316 Ill. App. 3d 835, 841, 738 N.E.2d 574 (2000) (whether a drainage district's decision not to repair a drainage system was discretionary or ministerial presents a question of fact where, under Illinois Drainage Code (70 ILCS 605/4—15 (West 1992)), the Illinois legislature imposed a "duty" to keep systems in repair). The problem is, he might not have a way to enforce that right.

This court has held *mandamus* is not appropriate to compel an official to negotiate a rate of reimbursement to public aid providers. *People ex rel. Metropolitan Chicago Nursing Home Ass'n v. Walker*, 31 Ill. App. 3d 38, 41, 332 N.E.2d 750 (1975). In *Walker*, the court stated the duty to negotiate "encompasses a wide range of activities that may require an indefinite process of communication and compromise to take place over an unspecified period of time." *Walker*, 31 Ill. App. 3d at 42. The relief sought is "so indefinite and uncertain as to be outside the scope of mandamus." *Walker*, 31 Ill. App. 3d at 42.

Here, the plaintiffs' power to enforce the Director's statutory duty to negotiate is unclear with respect to the individual plaintiffs. In any event, in count II, plaintiffs sought only to compel defendants to negotiate with the Association. We are neither inclined nor equipped to oversee the continuing process that negotiations would require. Plaintiffs did not establish a clear right to such relief or a clear duty of defendants to engage in collective bargaining with the Association under the Personnel Code.

■ In count III, plaintiffs sought to compel defendants to process all grievances through step 4, specifically by appointing a grievance committee as required by the Rules (80 Ill. Adm. Code § 303.30 (2000)).

Although the Rules provide the Director shall appoint a grievance committee, the Director is not specifically required to submit every grievance to a committee. See 80 Ill. Adm. Code § 303.30 (2000). The Rules do state unless an expedited step 4 procedure is agreed to by the parties pursuant to procedures and policies issued by the Director, the grievance committee shall submit its written recommendations for disposition to the Director. But the Director has total discretion to modify

or disapprove any recommendation of a grievance committee, and his decision shall be final. 80 Ill. Adm. Code § 303.30(b), (c) (2000).

The extent of the Director's discretion in processing grievances and the existence of plaintiffs' right to have each grievance submitted to a grievance committee is not clearly evident from the Rules or the Personnel Code. See *Baldacchino*, 289 Ill. App. 3d at 113. We were informed at oral argument the Director in fact does appoint the grievance committee referred to by the plaintiffs.

Because we find the trial court correctly decided the plaintiffs were not entitled to *mandamus* relief, we see no need to review the court's rulings that *laches* and lack of standing were additional reasons to dismiss the plaintiffs' complaint. We do note, however, the allegations in the complaint, without more, do not make a strong case for the *laches* defense. We also note that lack of standing is not a jurisdictional matter and ordinarily is viewed as an affirmative defense. *People ex rel. Vuagniaux v. City of Edwardsville*, 284 Ill. App. 3d 407, 416, 672 N.E.2d 40 (1996).

CONCLUSION

Because *mandamus* does not lie, we affirm the judgment of the trial court.

Affirmed.

HALL, P.J., and CERDA, J., concur.