**2022 IL 128354**


# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS


_____

(Docket No. 128354)

GRANT NYHAMMER, Appellee, v. PAULA BASTA,
in Her Official Capacity as Director of Aging, Appellant.


*Opinion filed November 28, 2022.*



JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Anne M. Burke, Neville, Michael J. Burke, Carter, and Holder White concurred in the judgment and opinion.



**OPINION**

¶ 1    Administrative agencies have been granted authority by our General Assembly to make a myriad of decisions affecting all aspects of society. These agencies are part of the executive branch of our government and are established to perform essentially executive functions. 73 C.J.S. *Public Administrative Law and Procedure* § 33 (Oct. 2022 Update). Generally, administrative agencies have no

judicial powers. *Id.* § 36. However, an administrative agency may exercise a judicial or quasi-judicial function if it decides a dispute of adjudicative fact or if the law otherwise requires it to act in a judicial manner. *Id.* In Illinois, such adjudicatory proceedings are referred to as "contested case[s]," which require the agency to adopt procedural safeguards that resemble those provided in an evidentiary hearing. See 5 ILCS 100/10-5 (West 2018). In this case, this court is asked to consider whether two agency decisions, both of which are committed to the agency's discretion, require hearings under these provisions of the Illinois Administrative Procedure Act (Procedure Act) (5 ILCS 100/1-1 *et seq.* (West 2018)). For the following reasons, we find that they do not, and we reverse the decision of the appellate court that held otherwise, thus affirming the circuit court's judgment that dismissed a complaint for *mandamus* to direct the agency to hold such hearings.

¶ 2                                    I. BACKGROUND

¶ 3        Plaintiff, Grant Nyhammer, in his capacity as executive director and general counsel of the Northwestern Illinois Area Agency on Aging (NIAAA), filed a "complaint for *mandamus*" in the circuit court of Winnebago County, naming Paula Basta, in her capacity as Director of the Department on Aging (Department), as Defendant. NIAAA is the "area agency on aging (AAA)" that was designated by the Department for "Planning Service Area 1," which comprises the counties of Jo Daviess, Stephenson, Winnebago, Boone, Carroll, Ogle, De Kalb, Whiteside, and Lee. 20 ILCS 105/3.08 (West 2018). As the AAA for this planning area, NIAAA is responsible for the planning and development of a "comprehensive and coordinated service delivery system" for older persons. *Id.* § 3.07. The Department is responsible for overseeing the administration of such services and designates the AAAs to receive funds available under the Older Americans Act of 1965 (Older Americans Act) (42 U.S.C.A. § 3001 *et seq.* (2018)), as well as other funds made available by the State or the federal government. 20 ILCS 105/3.07 (West 2018). Prior to the events leading to the dispute that is the subject of this action, the Department also designated NIAAA as a "regional administrative agency (RAA)" for the purposes of administering programs created by the Adult Protective Services Act (Protective Act). 320 ILCS 20/1 *et seq.* (West 2014). The Protective Act tasks the Department with the responsibility to "establish, design, and manage a

protective services program for eligible adults who have been, or are alleged to be, victims of abuse, neglect, financial exploitation, or self-neglect." *Id.* § 3(a).

¶ 4      According to the complaint, NIAAA filed two petitions for administrative hearings with the Department, and the Department rejected both petitions on the basis that neither presented a "contested case" for which an administrative hearing is required under section 1-30 of the Procedure Act. 5 ILCS 100/1-30 (West 2018). The petitions were appended to the complaint for *mandamus*, and we summarize them here.

¶ 5                                A. NIAAA's First Petition

¶ 6      In its first petition, NIAAA alleges as follows. In July 2013, NIAAA sent an e-mail to the Department, stating that the new Protective Act Program Services Manual (Manual) was invalid and requesting a recall of the Manual. As documented by correspondence appended to the first petition, in October 2013, NIAAA sent an e-mail to the Department stating that NIAAA was considering litigation regarding the Manual. In December 2013, the Department notified NIAAA that it was terminating its fiscal year 2014 Protective Act grant pursuant to the grant agreement, which provides for termination without cause by either party with 30 days' notice. The notification also provided that NIAAA would no longer serve as RAA under the Protective Act and the Department would assume that role as to Planning Service Area 1 until further notice.[1]

¶ 7      The first petition alleges that five years later, in April 2019, an employee of the Department told NIAAA that she had been given an order in 2014 to withhold funding from NIAAA to retaliate for its advocacy regarding the Manual. Although NIAAA does not know what funding was withheld, it alleges that in 2014-15, the Department awarded $3.79 million in "other funding" to the other AAAs but that

---

[1] The Department revoked NIAAA's status as RAA for fiscal year 2014-15, but NIAAA has since been reestablished as RAA for Planning Area 1.

NIAAA received zero "other funding."[2] Despite its efforts to have the Department investigate this past withholding of funding, the Department has not done so.

¶ 8        In its first petition, NIAAA requests the Department to, *inter alia*, adopt administrative rules for "contested case" hearings before the Department and to compensate NIAAA for the lost funding. The Department denied the request for a hearing on the basis that the funding issues did not present a "contested case" under the Procedure Act. The Department invited a discussion of these issues to resolve NIAAA's concerns but stated it could not issue a "final decision or order," as defined in the Procedure Act, because that provision is only applicable to "contested cases." See *id.* § 10-50.

¶ 9                            B. NIAAA's Second Petition

¶ 10       In its second petition, NIAAA requests a hearing on the Department's 2019 rejection of NIAAA's designation of Protective Act providers. See 320 ILCS 20/3(a) (West 2018) (the Department shall contract with and/or fund regional administrative agencies, provider agencies, or both, for provision of Protective Act functions). The petition alleges that the Department had conflicting standards for the designation of service providers. According to the second petition, although the Department's stated reason for rejecting the designation was "errors in the instructions and application used for scoring purposes," the Department had not performed such a review or rejected NIAAA's designation "in at least ten years." The second petition requests the Department to adopt administrative rules for "contested case" hearings, cease using the Manual, and accept NIAAA's designation of Protective Act provider.

---

[2]Although NIAAA's complaint for *mandamus* states that "*[i]nter alia*, the [i]nitial [p]etition alleges that the Department withheld [Older Americans Act] funding from NIAAA in violation of" section 3026(f)(2)(b) of the Older Americans Act (42 U.S.C.A. § 3026(f)(2)(b) (2012)) and states, "[i]t is believed the Department withheld [Older Americans Act] funding from NIAAA," the first petition in fact makes no allegation regarding the Department's withholding Older Americans Act funding from NIAAA but, rather, alleges the Department terminated NIAAA's status as RAA under the Protective Act and withheld "other funding" from NIAAA, including funding from the Protective Act grant, which is consistent with the Department's termination of NIAAA as an RAA.

¶ 11     The Department rejected the second petition on the basis that it did not present a "contested case." The Department explained that the Protective Act defines "Provider Agency" as "any public or nonprofit agency in a planning and service area that is selected by the Department or appointed by the [RAA] with prior approval by the Department." *Id.* § 2(h). The Department further explained that the Protective Act provides that an AAA must obtain "prior approval" from the Department as to its adult protective services provider designation process. *Id.* § 3(b). Because these decisions are discretionary with the Department, the Department determined they do not present "contested cases" requiring a hearing.

¶ 12                    C. NIAAA's Claims for *Mandamus*

¶ 13     Count I of the complaint alleges that the Department does not have administrative rules that comply with the Procedure Act. See 5 ILCS 100/10-20 (West 2018). Count II of the complaint alleges that the Department has a duty to provide NIAAA with an administrative hearing on the initial petition regarding the withholding of "other funding." Count III of the complaint alleges that the Department has a duty to provide NIAAA a hearing on the second petition regarding the rejection of NIAAA's adult protective services provider designation (service provider designation). The complaint requests the circuit court to enter a writ of *mandamus*, ordering the Department to (1) adopt administrative rules that comply with the Procedure Act for "contested case" hearings, (2) provide NIAAA a hearing on its first petition, (3) provide NIAAA a hearing on its second petition, (4) pay NIAAA's damages and costs, and (5) pay litigation expenses and attorney fees.

¶ 14                    D. The Department's Motion to Dismiss

¶ 15     The Department filed a motion to dismiss NIAAA's complaint pursuant to section 2-615 of the Code of Civil Procedure (Code). 735 ILCS 5/2-615 (West 2018). The Department argued that NIAAA failed to state any claim for which a writ of *mandamus* could be granted. In particular, the Department argued that the complaint did not establish "a clear right to relief, a clear duty to act, and clear authority to comply with the order" as is required to obtain this extraordinary relief. See *People ex rel. Glasgow v. Kinney*, 2012 IL 113197, ¶ 7. Following oral

argument on the motion to dismiss, the circuit court granted the motion, thus dismissing NIAAA's complaint with prejudice. The circuit court found that the duties NIAAA was seeking to establish in its complaint were discretionary with the Department and that NIAAA was not entitled to an administrative hearing as to these matters as alleged in the complaint.

¶ 16                         E. The Appellate Court's Opinion

¶ 17        The appellate court, in a published opinion, reversed the decision of the circuit court. 2022 IL App (2d) 200460, ¶ 48. Initially, the appellate court addressed NIAAA's motion to vacate the circuit court's dismissal of count III, which requested a hearing on the Department's rejection of NIAAA's service provider designation, based on a recently adopted regulation. *Id.* ¶ 24 (citing 89 Ill. Adm. Code 230.420(d), amended at 45 Ill. Reg. 10780 (eff. Aug. 10, 2021)). This amendment to section 230.420(d)(2) provides that the Department will allow appeals by " '[a]ny AAA when the Department proposes to: *** [r]eject the AAA's recommendation to designate a service provider.' " *Id.* (quoting 89 Ill. Adm. Code 230.420(d), amended at 45 Ill. Reg. 10780 (eff. Aug. 10, 2021)). The appellate court found that, because the amendment contains "absolutely no language overcoming the presumption of prospective, rather than retroactive, application," the motion would be denied. *Id.* (citing *Doe Three v. Department of Public Health*, 2017 IL App (1st) 162548, ¶ 37).

¶ 18        Although the appellate court recognized that it was reviewing the order of the circuit court that granted the Department's motion to dismiss NIAAA's complaint for *mandamus*, it transitioned to conducting an administrative review of the Department's decision to deny NIAAA's petitions for a hearing. *Id.* ¶ 31. In so doing, the appellate court found it was reviewing "the administrative agency's decision, not the trial court's decision." *Id.* (citing *Kildeer-Countryside School District No. 96 v. Board of Trustees of the Teachers' Retirement System*, 2012 IL App (4th) 110843, ¶ 20). The appellate court then applied what it found to be the relevant provisions of the Procedure Act, finding that the Department's decisions did not comport with the requirements for final decisions set forth in section 10-50(a) (5 ILCS 100/10-50(a) (West 2018)) because the Department's "summary dismissals of NIAAA's petitions and its conclusory statements that the petitions

- 6 -

failed to present contested cases were insufficient for meaningful judicial review." 2022 IL App (2d) 200460, ¶¶ 32-33.

¶ 19    Finally, the appellate court examined NIAAA's petitions and, with respect to the second petition, determined that the Department's denial of approval of NIAAA's service provider designation presented a "question of fact," because the Department's regulations state that the Department would not do so "unreasonably." *Id.* ¶ 40 (citing 89 Ill. Adm. Code 270.215(b)(1) (2018)). The appellate court then determined that the Department's summary determination that NIAAA was not entitled to a hearing on its petitions constituted a failure "to grant a hearing where findings of fact and conclusion of law were determined after an opportunity to be heard." *Id.* ¶ 42. The appellate court found the Department was required to give NIAAA adjudicatory hearings and determine the merits of its petitions, that the Department had refused to do so, and that "the Department shall grant the NIAAA hearings and render decisions so that, if desired, administrative review may be perfected." *Id.* ¶ 43.

¶ 20    The appellate court concluded that NIAAA's first and second petitions presented "contested cases." *Id.* ¶ 47. It then vacated the order of the circuit court that granted the Department's motion to dismiss NIAAA's complaint for *mandamus*, vacated "the final decision by the Department," and remanded the case "to the Department for further review, evaluation, findings, and decision consistent with [its] opinion." *Id.* This court allowed the Department's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2021).

¶ 21                                    II. ANALYSIS

¶ 22                          A. Standard and Scope of Review for
                                  Section 2-615 Motion to Dismiss

¶ 23    The circuit court dismissed NIAAA's complaint for *mandamus* pursuant to section 2-615 of the Code. 735 ILCS 5/2-615 (West 2018). " 'A section 2-615 motion to dismiss tests the legal sufficiency of a complaint.' " *O'Connell v. County of Cook*, 2022 IL 127527, ¶ 18 (quoting *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31). " 'In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be

drawn from those facts,' and we 'construe the allegations in the complaint in the light most favorable to the plaintiff.' " *Id.* (quoting *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). " '[A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery.' " *Id.* (quoting *Marshall*, 222 Ill. 2d at 429) Our standard of review for a dismissal under section 2-615 is *de novo*. *Id.* ¶ 19.

¶ 24    It is noteworthy that the appellate court reversed the circuit court's order that granted the Department's motion to dismiss. The effect of that reversal would be to reinstate the complaint in the circuit court, which had not been determined on the merits. See *Jackson v. Michael Reese Hospital & Medical Center*, 294 Ill. App. 3d 1, 9 (1998) (the scope of review for a section 2-615 motion to dismiss is whether the complaint sufficiently states a cause of action, and the merits of the case are not considered). Thus, prior to affording the relief sought by NIAAA in the complaint for *mandamus*, further proceedings were required in the circuit court, including the filing of an answer and, absent the filing of dispositive motions, a hearing to adjudicate the truth of the matters alleged in the complaint. See *People ex rel. Commissioners of Big Lake Special Drainage District v. Dixon*, 346 Ill. 454, 460 (1931) (a proceeding for the writ of *mandamus* is an action at law, and the pleadings are governed by the same rules as apply to other actions at law).

¶ 25    Because the appellate court's opinion reversed the circuit court's order dismissing the complaint, further proceedings in the circuit court were required. Thus, the appellate court erred when it vacated "the Department's decision" and remanded the case to the Department with directions that the Department further review and evaluate NIAAA's petitions. In so doing, the appellate court prematurely granted relief to NIAAA without giving the Department the opportunity to answer the complaint or the circuit court the opportunity to consider the merits of the petition for *mandamus*. In other words, the appellate court treated the case as if it were reviewing it on its merits, rather than based on the adequacy of the pleadings alone.

¶ 26                              B. Scope of Writ of *Mandamus*

¶ 27    Even if it were proper for the appellate court to have remanded this cause to the Department, effectively granting relief to NIAAA prior to any proceeding on the

merits of the complaint, we note that the directions the appellate court gave to the Department, for "further review, evaluation, findings, and decision consistent with [its] opinion," was not a proper writ of *mandamus*. *Mandamus* will lie in a proper case to compel performance of a specific act but may not be used to compel a general course of conduct. *People ex rel. Metropolitan Chicago Nursing Home Ass'n v. Walker*, 31 Ill. App. 3d 38, 41 (1975). An award of a writ of *mandamus* is improper where the duties involved are insufficiently specific or where issuance of the writ would require the court to assume supervision over a continuous course of official conduct. *Id.* Here, the appellate court did not direct the Department toward any specific action. It did not even require the rulemaking or "contested case" hearing that NIAAA was requesting in its complaint. Instead, it required the Department to further review and evaluate its decisions. This mandate lacks the specificity required of a writ of *mandamus*. See *id.*

¶ 28                           C. Vacatur and Remand to Department
                                      With Directions Was Error

¶ 29       For the foregoing reasons, we find that the appellate court erred in effectively granting substantive relief to NIAAA without a determination of the merits of the *mandamus* complaint by the circuit court. Furthermore, the directions the appellate court provided to the Department on remand did not constitute a proper writ of *mandamus*. Having so found, we turn to a *de novo* review of the propriety of the appellate court's decision to reverse the circuit court's order dismissing NIAAA's complaint for *mandamus* pursuant to section 2-615 of the Code. 735 ILCS 5/2-615 (West 2018).

¶ 30                    D. Characterization and Elements of *Mandamus* Action

¶ 31       At the outset of our *de novo* review of the adequacy of NIAAA's complaint, it is important to note that the case before us is not one for administrative review of the Department's decisions with respect to NIAAA's funding and service provider designations, nor is it an action for administrative review of the Department's decisions to deny NIAAA's first and second petitions for an adjudicatory hearing that followed. In its complaint, NIAAA did not request administrative review of the Department's decisions, either under the Administrative Review Law (735 ILCS

- 9 -

5/3-101 *et seq.* (West 2018)) or via a common-law writ of *certiorari* (see *Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996) ("[a] common law writ of *certiorari* is a general method for obtaining circuit court review of administrative actions when the act conferring power on the agency does not expressly adopt the Administrative Review Law and provides for no other method of review)).["3] Rather, NIAAA's complaint was one for a writ of *mandamus*.

¶ 32     The parameters of a writ of *mandamus* have been set forth by this court as follows:

   " '*Mandamus* is an extraordinary remedy to enforce, as a matter of right, "the performance of official duties by a public officer where no exercise of discretion on his part is involved." [Citation.]' [Citation]. 'A writ of *mandamus* will be awarded only if a plaintiff establishes a clear right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the writ.' [Citation.] There also must be no other adequate remedy. [Citation.] *Mandamus* is improper if it substitutes the court's discretion or judgment for that of the official. [Citations.]' " *McHenry Township v. County of McHenry*, 2022 IL 127258, ¶ 59.

¶ 33                  E. Count I of NIAAA's Complaint Is Moot
                            (Dismissal Reinstated)

¶ 34     Based on the foregoing principles, our review of the legal sufficiency of NIAAA's complaint for a writ of *mandamus* turns on whether it has a clear right to the relief it seeks in the complaint. In count I of its complaint, NIAAA seeks to compel the Department to adopt rules pertaining to administrative hearings in accordance with article 10 of the Procedure Act. 5 ILCS 100/art. 10 (West 2018). NIAAA conceded at oral argument that, effective August 10, 2021, the Department enacted regulations that specifically require hearings before the Department to be

---

[3]Neither the Department's enabling legislation, the Illinois Act on Aging (20 ILCS 105/1 *et seq.* (West 2018)) nor the Protective Act (320 ILCS 20/1 *et seq.* (West 2018)) adopts the Administrative Review Law. Accordingly, to seek judicial review of the Department's decisions to "withhold funding" and reject NIAAA's service provider designations, NIAAA would need to file a common-law petition for a writ of *certiorari*. See *id.*

conducted in accordance with article 10 of the Procedure Act. See 89 Ill. Adm. Code 230.400-230.495 (2021). Thus, no actual rights or interests of NIAAA remain, and it is impossible for the court to grant effectual relief to either party on count I of the complaint. Accordingly, we find that count I is moot and note that NIAAA has not advanced any recognized exception to the mootness doctrine during these proceedings. Accordingly, we reinstate that portion of the circuit court's order that granted the Department's motion to dismiss count I of the *mandamus* complaint.[4] See *Jackson v. Peters*, 251 Ill. App. 3d 865, 867 (1993) ("[a] *mandamus* petition will be dismissed as moot if no actual rights or interests of the parties remain or if events occur that make it impossible for the court to grant effectual relief"). Having done so, we turn to the merits of the appellate court's decision to reverse the circuit court's order dismissing counts II and III of NIAAA's complaint for *mandamus*.

¶ 35                      F. Counts II and III—Right to Hearing

¶ 36        In counts II and III respectively, NIAAA seeks to require the Department to conduct administrative hearings on its first and second petitions. These petitions requested the Department to reconsider its decisions to withhold Protective Act and/or "other funding" from NIAAA (count I) and to reject NIAAA's service provider designation (count II). To determine whether NIAAA has alleged sufficient facts showing it is clearly entitled to administrative hearings in these circumstances, as required to obtain a writ of *mandamus*, we turn to the Procedure Act.

¶ 37                      1. *The Administrative Procedure Act*

¶ 38        The Procedure Act applies to every agency, which is defined broadly to include each department of the State and each administrative unit of the State government

---

[4]The appellate court's disposition of the appeal left count I pending in the circuit court, although the appellate court did not remand the cause to the circuit court. This is because the appellate court reversed the circuit court's order dismissing all counts of the complaint but then remanded the cause to the Department for it to "further review and evaluate NIAAA's petitions." However, it did not require the Department to enact administrative regulations, which was the relief sought in count I. Because NIAAA did not cross-appeal this aspect of the appellate court's decision, it could be said that NIAAA has abandoned count I. In any event, we reinstate the circuit court's dismissal.

- 11 -

that is created pursuant to statute. 5 ILCS 100/1-5, 1-20 (West 2018). Accordingly, the Department is subject to the Procedure Act, as it was created as an administrative unit of government pursuant to section 4 of the Illinois Act on the Aging (Act). 20 ILCS 105/4 (West 2018). Because article 10 of the Procedure Act (20 ILCS 100/art. 10 (West 2018)) governs administrative hearings, we look to that section to determine the sufficiency of NIAAA's complaint for *mandamus*, because NIAAA's contention that it is entitled to such relief is based on the claim that NIAAA has a clear right to an administrative hearing on its first and second petitions.

¶ 39         The circuit court found that NIAAA was not entitled to *mandamus* relief because the matters set forth in the first and second petitions did not constitute "contested cases" within the meaning of the Procedure Act. Nearly every section of article 10 of the Procedure Act limits its application to "contested cases." See, *e.g.*, 5 ILCS 100/10-5 (West 2018) (agencies must adopt rules establishing procedures for contested cases); *id.* § 10-15 (standard of proof for contested cases); *id.* § 10-20 (qualifications for administrative law judges for contested cases); *id.* § 10-25 (notice and hearing for contested cases); *id.* § 10-35 (record in contested cases); *id.* § 10-40 (rules of evidence for contested cases); *id.* § 10-45 (proposal for decision in contested cases); *id.* § 10-50 (decisions and orders in contested cases). This is significant because the term "contested case" has a specific meaning when used in the Procedure Act. See *id.* § 1-10 (terms set forth in the definition sections of the Procedure Act have the meaning ascribed to them therein unless context otherwise requires). Thus, if the Department's funding and service provider designation decisions concerning NIAAA's status as an AAA and RAA qualify as a "contested case" within the meaning of the Procedure Act, then NIAAA may be entitled to relief. However, if they do not, NIAAA cannot demonstrate a clear right to a hearing, and its complaint for a writ of *mandamus* fails as a matter of law. See *McHenry Township*, 2022 IL 127258, ¶ 59.

¶ 40         The definition of "contested case" is set forth in section 1-30 of the Procedure Act as follows:

> " 'Contested case' means an *adjudicatory* proceeding (not including ratemaking, rulemaking, or quasi-legislative, informational, or similar proceedings) in which the individual legal rights, duties, or privileges of a party

are *required by law to be determined by an agency only after an opportunity for a hearing.*" (Emphases added.) 5 ILCS 100/1-30 (West 2018).

¶ 41        Prior to the appellate court's opinion in this case, our appellate court's decisions have held that, in order to be entitled to a hearing before an administrative agency, and for an agency decision to thus come within the purview of article 10 of the Procedure Act, there must be some legal authority, in the form of a statute, constitutional right, or administrative regulation, that requires the agency to conduct a hearing when making the decision at issue. See *In re Medical License of Munoz*, 101 Ill. App. 3d 827, 829-30 (1981) (no hearing required before a determination of whether an applicant for a medical license has passed the medical examination because the Medical Practice Act (Ill. Rev. Stat. 1977, ch. 111, ¶ 4401 *et seq.*) does not require a hearing); see also *Key Outdoor, Inc. v. Department of Transportation*, 322 Ill. App. 3d 316, 323 (2001) (no hearing required for a determination of whether a commercial driveway permit should be granted because the Highway Code (605 ILCS 5/1-101 *et seq.* (West 1998)) does not require a hearing); *Callahan v. Sledge*, 2012 IL App (4th) 110819, ¶ 29 (no hearing required for Central Management Services when reviewing insurance plan's denial of coverage for employee's medical expenses where no legal authority exists requiring such a hearing).

¶ 42        Without acknowledging or applying the holdings in these cases, nor explaining its departure from their reasoning, the appellate court, in conclusory fashion, determined that NIAAA was entitled to a hearing on the Department's funding and service provider decisions, finding that "it is patently obvious NIAAA was seeking a determination of its rights, duties, or privileges by seeking a hearing with the Department" and that, "[c]ontrary to the enunciated public policy recognizing that there should be some form of administrative review (5 ILCS 100/10-5 (West 2018)), the Department summarily determined that there was no need for a hearing." 2022 IL App (2d) 200460, ¶ 41. We note that section 10-5 of the Procedure Act does not, in fact, enunciate a public policy recognizing that there should be some form of administrative review. Rather, it requires agencies to adopt rules of procedure for "contested case[s]." 5 ILCS 100/10-5 (West 2018). This, of course, prompts the question as to whether the subject matter of NIAAA's first and second petitions present "contested cases" as defined in section 1-30 of the Procedure Act. *Id.* § 1-30. As further explained below, we find that they do not.

¶ 43     As set forth above, and consistently applied by our appellate court prior to the appellate decision in this case, the plain language of section 1-30 of the Procedure Act makes clear that a "contested case," as used in the Procedure Act, is "*an adjudicatory proceeding \*\*\* in which the individual legal rights, duties, or privileges of a party are required by law to be determined by an agency only after an opportunity for a hearing*." (Emphases added.) *Id.* NIAAA's first and second petitions sought a hearing regarding the decisions of the Department to withhold funding from NIAAA by withholding its RAA status and to reject NIAAA's designated service providers in conjunction with its role as an RAA under the Protective Act. Thus, it follows that, to determine whether these decisions, which affected the rights, duties, or privileges of NIAAA as an RAA, were required to be determined by the Department only after an opportunity for a hearing, we must consider the sources of law governing the Department's decision-making. To that end, we examine the relevant statutory, regulatory, and constitutional provisions in turn.

¶ 44                              2. *Statutory Sources of Right to Hearing*

¶ 45     The statutes of this state giving administrative agencies the authority to make decisions are replete with examples where decisions are required to be rendered "after an opportunity for hearing." For example, a multitude of statutory directives require "an opportunity for hearing" prior to the denial or revocation of licenses by an administrative agency in a variety of contexts. See, *e.g.*, 20 ILCS 1605/10.1 (West 2020) (requiring "an opportunity for a hearing" within 30 days after the Department of the Lottery revokes a license); 215 ILCS 5/511.107 (West 2020) (requiring "an opportunity for hearing" before the Department of Insurance suspends or revokes the license of a third-party administrator); 210 ILCS 125/16.1 (West 2020) (requiring an "opportunity for a hearing" before the Department of Public Health revokes the license of a swimming facility). Similarly, many statutes require that enforcement penalties by administrative agencies be rendered only "after an opportunity for hearing." See, *e.g.*, 225 ILCS 345/16 (West 2020) (requiring "an opportunity to be heard" before the Department of Public Health imposes a fine or penalty upon a water well and pump installation contractor); 815 ILCS 307/10-55 (West 2020) (requiring an "opportunity for a hearing" before the Secretary of State imposes a fine upon a broker for a violation of the Illinois

- 14 -

Business Broker Act of 1995). There are many other examples of decisions that are required to be made after "an opportunity for hearing" in Illinois statutes that confer powers on administrative agencies. Thus, it is evident to this court that, when the General Assembly intends to require a hearing before an agency makes an administrative decision, it does so explicitly and it does so in language precisely tracking section 1-30 of the Procedure Act. 5 ILCS 100/1-30 (West 2018). Thus, we turn to the statutes governing the Department's decisions here.

¶ 46                    a. Enabling Legislation (Illinois Act on the Aging)

¶ 47        Section 4 of the Act creates the Department to administer programs related to " 'Services to Older People,' " as described by article VIII of " 'The Illinois Public Aid Code' " (see Ill. Rev. Stat. 1971, ch. 23, § 8-1 *et seq.* (repealed by Pub. Act 78-242, art. 1, § 10 (eff. Nov. 9, 1973))), on the effective date of the Act, and to be "the single State agency for receiving and disbursing funds made available under the Older Americans Act" (42 U.S.C. § 3001 *et seq.* (2018)).[5] 20 ILCS 105/4 (West 2018). Additional powers and duties of the Department are set forth in section 4.01 of the Act (*id.* § 105/4.01). These include the duty and power to "evaluate all programs, services, and facilities for the aged and for minority senior citizens within the State and determine the extent to which present public or private programs, services and facilities meet the needs of the aged." *Id.* § 4.01(1).

¶ 48        As to funding, which was the subject of NIAAA's first petition, the Act gives the Department the duty and power "[t]o receive and disburse State and federal funds made available directly to the Department." *Id.* § 4.01(4). In addition, the Act gives the Department the duty and power to make grants to AAAs from the Meals on Wheels Fund (*id.* § 4.01(21)) and to "function as the sole State agency to receive and disburse State and federal funds for providing adult protective services in a domestic living situation in accordance with the [Protective Act]" (*id.* § 4.01(24)).

[5]Again, contrary to the allegations of the complaint, which is belied by the first petition itself, NIAAA does not allege that the Department withheld federal funds made available under the Older Americans Act without a hearing. Rather, the first petition alleges that the Department withheld unspecified "other funding," which is associated with the Department's removal of NIAAA as an RAA for fiscal year 2014-15 and thus seems to implicate Protective Act funding, rather than Older Americans Act funding.

There are no provisions in the Act that pertain to approval of service provider designations, which is the subject of the second petition.

¶ 49    Notably absent from these provisions of the Act is any indication that the Department is to exercise these powers and duties "only after an opportunity for a hearing." In fact, the only mention of a hearing in these provisions is the requirement that the Department hold a public hearing regarding its development of guidelines for the organization and implementation of Volunteer Services Credit Programs to be administered by AAAs or community-based senior service organizations. *Id.* § 4.01(23). It is worth noting, then, that congruent with its other designations of administrative authority by statute, where the General Assembly has chosen to limit the discretion of the Department as to the powers and duties it outlines for the Department by requiring decisions to be made after a hearing, it has expressly stated this. In any event, having determined that nothing in the Act requires the Department to make the decisions complained of by NIAAA in its petitions only after an opportunity for hearing, we turn to the Protective Act (320 ILCS 20/1 *et seq.* (West 2018)).

¶ 50                          b. Adult Protective Services Act

¶ 51    The Protective Act requires the Department to "establish, design, and manage a protective services program for eligible adults who have been, or are alleged to be, victims of abuse, neglect, financial exploitation, or self-neglect. *Id.* § 3(a). To this end, the Department is to "contract with or fund, or contract with and fund, [RAAs], provider agencies, or both, for the provision of those functions." *Id.* The Protective Act provides that the Department shall designate an AAA as the RAA or, in the event the AAA in that planning and service area is "deemed by the Department to be unwilling or unable to provide those functions, the Department may serve as the [RAA] or designate another qualified entity to serve as the [RAA]." *Id.* § 2(i). Importantly, the Protective Act provides that "any such designation shall be subject to terms set forth by the Department." *Id.* The Protective Act gives RAAs such as NIAAA the directive to designate provider agencies within its planning and service area "with prior approval by the Department." *Id.* § 3(b). There is no provision in the Protective Act requiring that

such approval only be made "after an opportunity for a hearing."

¶ 52                        c. No Statutory Right to Hearing

¶ 53    Having reviewed the statutory sources of authority relevant to the issues raised in NIAAA's complaint for *mandamus*, we find nothing in these provisions that requires that RAA designations, funding, or provider designations be made or approved by the Department after the opportunity for a hearing. Having found no statutory requirements for the Department to provide a hearing to NIAAA in these circumstances, we turn to the Department's regulations, for if the Department regulations provide that the determinations at issue were to be made after an opportunity for hearing, the petitions would have presented "contested cases" within the meaning of section 1-30 of the Procedure Act (5 ILCS 100/1-30 (West 2018)), because they would be "required by law" to be determined "after an opportunity for a hearing."

¶ 54                    d. Regulatory Sources of Right to a Hearing

¶ 55    At the time NIAAA filed its complaint for *mandamus*, the procedures for "appeals and fair hearings" before the Department were contained in sections 220.500 through 220.519 of the Department's regulations. 89 Ill. Adm. Code 220.500-220.519, repealed at 45 Ill. Reg. 10769 (eff. Aug. 10, 2021).[6] However, these sections did not specify which determinations by the Department were to be made after the opportunity for a hearing. Rather, provisions specifying which decisions the Department would make after the opportunity for a hearing were then, and remain, in section 230.410 of the Department's regulations. 89 Ill. Adm. Code 230.410, amended at 45 Ill. Reg. 10780 (eff. Aug. 10, 2021).

¶ 56    At the time NIAAA filed its complaint for *mandamus*, section 230.410 of the Department's regulations (*id.*) provided that the Department shall provide an opportunity for a hearing to an AAA when the Department proposes to

[6]Sections 220.500 through 220.519 were repealed as of August 10, 2021, and replaced by regulations adopting procedures for hearings specific to program areas administered by the Department. For example, procedures for hearings specific to Older Americans Act programs are now set forth in sections 230.400 to 230.495. 89 Ill. Adm. Code 230.400-230.495 (2021).

(1) disapprove the area plan or any amendment to the area plan that has been submitted to the Department by the AAA or (2) withdraw from the agency designation as an AAA. In addition, that provision required a hearing for "[a]ny eligible applicant for designation as a planning and service area under the provisions of [the Older Americans Act] whose application is denied" or any nutrition project that an area agency proposes to defund. 89 Ill. Adm. Code 230.410, amended at 5 Ill. Reg. 3722 (eff. Mar. 31, 1981), renumbered at 7 Ill. Reg. 5178 (eff. July 27, 1983). Thus, while applicable Department regulations set forth specific determinations by the Department where an AAA would be afforded a hearing, the determinations complained of in the first and second petitions, which involved funding decisions and service provider designations, were not included therein. Accordingly, the Department's regulations did not require the decisions at issue to be made only after an opportunity for a hearing.

¶ 57                            e. Effect of Amended Section 230.420

¶ 58       Effective August 10, 2021, the aforementioned provisions were repealed and replaced with an amendment to section 230.420 of the Department's regulations, which provides the Department will allow appeals by, *inter alia*, an AAA when the Department proposes to "(1) [d]isapprove the area plan or any amendment to the area plan that has been submitted to the Department by the AAA; or (2) *[r]eject the AAA's recommendation to designate a service provider.*" (Emphasis added.) 89 Ill. Adm. Code 230.420 (2021). In other words, if NIAAA's second petition, which challenged the Department's denial of NIAAA's service provider designation, had been brought after August 10, 2021, the petition would present a "contested case" within the meaning of section 1-30 of the Procedure Act (5 ILCS 100/1-30 (West 2018)).

¶ 59       After these amendments were put into place, NIAAA filed two motions in the appellate court to "vacate dismissal of Count III," which is the count of the complaint for *mandamus* that requested a hearing on the second petition. NIAAA filed a similar motion with this court. NIAAA makes two arguments as to why, based on this amendment alone, this court should affirm the appellate court's decision and require a hearing as to the second petition, which involved the Department's rejection of NIAAA's service provider recommendation.

¶ 60    First, NIAAA argues that, when the proposed amendment was published in the Illinois Register, the Department admitted to the Joint Committee on Administrative Rules that the prior regulation needed to be repealed because it was "outdated, confusing, duplicative, unnecessary, overlapping, and unnavigable." NIAAA argues that this was tantamount to an admission that the Department erred in applying the prior rule to deny NIAAA a hearing. Second, NIAAA argues that section 230.420, as amended to include a right to a hearing for a service provider recommendation, should be applied retroactively. We reject these arguments.

¶ 61    As to any statement made by an agent of the Department in advance of the rule change, we do not see any logic to the proposition that such a statement has any bearing on the retroactive impact on the amendment to the rule. Most importantly, there is nothing in the language of the amendment to support retroactive application. This court has stated that the policy considerations against retroactive legislation apply with equal force to retroactive administrative regulations, which have the force of law. *Pressed Steel Car Co. v. Lyons*, 7 Ill. 2d 95, 106 (1955). An agency may, in proper cases, apply its administrative rule changes retroactively based on proper considerations, and a reviewing court may reject an administrative decision when the inequality of a retroactive application of an administrative regulation has not been counterbalanced by sufficiently significant state interests. *Gonzalez-Blanco v. Clayton*, 110 Ill. App. 3d 197, 204-05 (1982). However, NIAAA has provided no authority, and we are aware of none, for the proposition that a court can force retroactive application of an administrative regulation or that NIAAA has a clear right to a retroactive application of a regulation that is enforceable by a writ of *mandamus*.[7]

¶ 62    Even if NIAAA were clearly entitled to retroactive application of the amended rule providing it a right to appeal the Department's provider designation, we agree with the Department that NIAAA would not have a clear right to a hearing because its second petition was untimely under the Department's new regulations. Pursuant to the Department's regulations, all appeals other than those of "an older individual who is appealing the AAA's grievance response" must be submitted within 15 calendar days after notice of adverse action by the Department. Here, NIAAA

---

[7]NIAAA provided no such authority in either motion "for judgment on Count III" or in its answer to the Department's petition for leave to appeal, which it elected to stand as its brief.

received notice that the Department was rejecting its service provider designations on July 31, 2019, and filed the second petition on August 23, 2019, a period of 24 days. Accordingly, NIAAA does not have a clear right to a hearing on its second petition under the amended regulations.

¶ 63                                3. *Due Process Clauses*

¶ 64        Having found nothing in the relevant statutes and regulations that provides that the decisions by the Department regarding funding and service provider designations for AAAs or RAAs are to be made only after an opportunity for a hearing, we turn to the state and federal constitutions. The right to a hearing implicates the due process clauses of the United States and Illinois Constitutions, which protect against the deprivation of liberty or property without due process of law. U.S. Const., amend. XIV, Ill. Const. 1970, art. I, § 2. However, procedural due process protections are triggered only when a constitutionally protected liberty or property interest is at stake. *Hill v. Walker*, 241 Ill. 2d 479, 485 (2011) (citing *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979)). Accordingly, if NIAAA does not have a constitutionally protected interest in the "other funding" or its service provider designation, there can be no due process clause violation. See *id.* (citing *Wilson v. Bishop*, 82 Ill. 2d 364, 368 (1980)).

¶ 65        Here, NIAAA makes no argument that it has a life or liberty interest in the subjects of its petitions for hearing. Thus, the only potentially applicable interest NIAAA could have in the funding or service provider designation for which it seeks a hearing from the Department is a property interest. However, to have a property interest, there must be more than a unilateral expectation of the funding or approval of its service provider designations. *Groenings v. City of St. Charles*, 215 Ill. App. 3d 295, 307 (1991) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972), and *Creekside Associates, Inc. v. City of Wood Dale*, 684 F. Supp. 201, 204 (N.D. Ill. 1989)). Rather, NIAAA must show a legitimate claim of entitlement to the funding or service provider designation for which it seeks a hearing. *Id.*

¶ 66        Applying these principles to the case at bar, we cannot say that NIAAA has a constitutionally protected property interest because NIAAA has not alleged facts explaining how, under objectively ascertainable criteria set forth in the law that

limits the Department's discretion in some way, it is entitled to the "other funding" or service provider designation approval that it seeks. See *I-57 & Curtis, LLC v. Urbana & Champaign Sanitary District*, 2020 IL App (4th) 190850, ¶¶ 89-90 (absent protectable property interest, there can be no legally sufficient due process claim). Moreover, in its answer to the Department's petition for leave to appeal, on which it elected to stand as its brief, NIAAA does not enunciate any constitutional basis for affirming the appellate court's decision. Thus, it can be said to have forfeited any such argument. See Ill. S. Ct. R. 341(h), (i) (eff. Oct. 1, 2020) (points not argued are forfeited, and appellee brief must conform to this requirement).

¶ 67        Forfeiture notwithstanding, it does not appear that NIAAA could make a showing that it has a legitimate claim of entitlement to the funding or service provider designations for which it seeks hearings. As described above, the relevant statutes and regulations grant the Department essentially unbridled discretion in administering the Protective Act and providing funding for programs for older Americans. See 20 ILCS 105/4.01 (West 2018).[8] Because there are no constitutionally protected interests at stake in the Department's funding and service provider designation decisions, NIAAA was not entitled to a hearing on these decisions under the due process clauses. See *Hill*, 241 Ill. 2d at 485 (citing *Greenholtz*, 442 U.S. at 7).

¶ 68                        4. *Judicial Review of Agency Decisions*
                              *Outside of "Contested Cases"*

¶ 69        Having found that NIAAA's petitions did not present "contested cases" requiring a hearing, we address briefly the appellate court's articulated concern that

---

[8]The appellate court pointed to sections 270.215(b)(1) (89 Ill. Adm. Code 270.215(b)(1) (2018)) and 270.220(d) (*id.* § 270.220(d)) of the Department's regulations as support for its finding that NIAAA is entitled to a hearing on the Department's decision to reject NIAAA's service provider designation, as these provisions state that the Department will not make such rejections "unreasonably." However, these provisions do not change the discretionary nature of the Department's decisions or create a legitimate claim of entitlement to such designations in favor of NIAAA. See *I-57 & Curtis, LLC*, 2020 IL App (4th) 190850, ¶ 88 (citing *Bower Associates v. Town of Pleasant Valley*, 761 N.Y.S.2d 64, 68 (App. Div. 2003) (a protectable property interest arises only when an agency is required to grant approval of a request upon ascertainment that certain objectively ascertainable criteria have been met)).

"the Department's summary dismissals of the NIAAA's petitions and its conclusory statements that the petitions failed to present contested cases were insufficient for meaningful judicial review." 2022 IL App (2d) 200460, ¶ 33; see also *Lucie B. v. Department of Human Services*, 2012 IL App (2d) 101284, ¶ 17. As we stated at the outset of our opinion, "[a] common law writ of *certiorari* is a general method for obtaining circuit court review of administrative actions when the act conferring power on the agency does not expressly adopt the Administrative Review Law and provides for no other form of review." *Hanrahan*, 174 Ill. 2d at 272. As previously noted, neither the Department's enabling legislation, the Act (20 ILCS 105/1 *et seq.* (West 2018)), nor the Protective Act (320 ILCS 20/1 *et seq.* (West 2018)) adopts the Administrative Review Law. Accordingly, the common-law writ of *certiorari* is the available method of reviewing the Department's decisions. See *Hanrahan*, 174 Ill. 2d at 272.

¶ 70        The appellate court's decision presumes that NIAAA's decisions are subject to judicial review. As this court explained in *Hanrahan*, however, "whether, and to what extent, action by an administrative agency is reviewable is a question of statutory interpretation." *Id.* at 272-73 (citing *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 497 (1988)). "While most agency actions are presumed reviewable, no presumption arises if there is a statutory bar to review or if statutory language commits the agency decision to unreviewable agency discretion." *Id.* (citing *Greer*, 122 Ill. 2d at 497). While there are several factors to consider in determining whether statutory language precludes judicial review, this determination is outside the scope of this court's review because NIAAA did not seek judicial review of the Department's decisions themselves but only the Department's denial of a hearing. See *People ex rel. Partee v. Murphy*, 133 Ill. 2d 402, 408 (1990) (this court declines to issue advisory opinions that resolve a question of law not presented by the facts of the case).

¶ 71        Although this court declines to address the issue of whether the Department's decisions that are at issue in this case are subject to judicial review, we note that, assuming they are, the rules of civil procedure apply to petitions for a writ of *certiorari*. See *Superior Coal Co. v. O'Brien*, 383 Ill. 394, 399-400 (1943) (the Civil Practice Act (Ill. Rev. Stat. 1941, ch. 110, § 1 *et seq.*) applies to all civil proceedings, both at law and in equity, and includes every claim or demand which was not at the adoption of the constitution as an action at law or a suit in chancery).

This means that, upon the filing of an appropriate writ of *certiorari*, the party challenging an agency decision would have all the rules of discovery available in civil actions at its disposal. Thus, the appellate court is incorrect in presuming that an administrative hearing is required for "meaningful judicial review" of an agency decision.

¶ 72                        5. *Dismissal of Counts II and III of*
                            Mandamus *Complaint Is Proper*

¶ 73        Counts I and II of NIAAA's complaint for *mandamus* seek to compel the Department to hold hearings on its 2014 funding decisions with respect to NIAAA's designation as an AAA, as well as its 2019 rejection of NIAAA's service provider designation, respectively. For the reasons set forth above, we hold that, to make a showing of clear entitlement to a hearing, a plaintiff must show that the decision presents a "contested case" as defined in section 1-30 of the Procedure Act. 5 ILCS 100/1-30 (West 2018). Pursuant to section 1-30, an administrative decision presents a "contested case" requiring a hearing if there is a source of law that requires the decision to be made after "the opportunity for a hearing." *Id.* Here, at the time these decisions were made, no statute, regulation, or constitutional provision required the decisions regarding funding AAAs or the approval of service provider designations by RAAs be made only after an opportunity for hearing. Accordingly, NIAAA cannot adequately state a cause of action for *mandamus*, and the circuit court did not err in dismissing counts II and III of the complaint pursuant to section 2-615 of the Code. 735 ILCS 5/2-615 (West 2018).

¶ 74                              III. CONCLUSION

¶ 75        For the foregoing reasons, we find that count I of NIAAA's complaint for *mandamus* is moot, and the circuit court properly dismissed counts II and III of the complaint because NIAAA cannot show a clear right to an administrative hearing on the matters set forth in its first and second petitions before the Department. Accordingly, we reverse the judgment of the appellate court and affirm the circuit court's judgment, which dismissed the complaint with prejudice.

¶ 76        Appellate court judgment reversed.

¶ 77        Circuit court judgment affirmed.